UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIRECT MARKETING EDUCATIONAL
FOUNDATION, INC.

     Plaintiff,

 -against-         CASE NO. 08 CV 1464

JOHN WILEY & SONS, Inc.

     Defendant.

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

---

Roger Juan Maldonado (RM-7035)
Sarah Yousuf (SY-0305)
**BALBER PICKARD MALDONADO &
VAN DER TUIN, PC**
1370 Avenue of the Americas
New York, New York 10019
(tel)(212) 246-2400

Ashima Aggarwal (AA-1444)
**JOHN WILEY & SONS, INC.**
111 River Street
Hoboken, NJ 07030-5774
(tel) (201) 748-6000
(fax) (201) 748-6500

# TABLE OF CONTENTS

STATEMENT OF FACTS....................................................................................................5

ARGUMENT

I.      STANDARD FOR GRANTING INJUNCTIVE RELIEF......................................6

II.     DMEF CANNOT SUCCEED ON THE MERITS OF ITS CLAIM FOR
        TRADEMARK INFRINGEMENT..........................................................................8

        A.     Wiley's use of the DMEF Mark on the Journal is authorized by DMEF....8

        B.     Wiley is acting within the scope of the license granted by DMEF..............8

        C.     There is no likelihood of confusion..........................................................10

        D.     The terms of the Agreement should not be modified by the Court...........11

III.    DMEF IS NOT ENTITLED TO INJUCTIVE RELIEF BECAUSE IT CANNOT
        DEMONSTRATE IRREPARABLE HARM.........................................................12

        A.     DMEF's claimed harm is speculative........................................................12

        B.     The Winter/Spring 2008 issue of the Journal is not inferior in quality to
               previously published issues of the Journal................................................13

        C.     The effect of publication of the Winter/Spring 2008 issue of the Journal on
               the impact factor will be neutral...............................................................13

IV.     THE BALANCE OF HARDSHIP FAVORS WILEY.........................................14

CONCLUSION...............................................................................................................16

# TABLE OF AUTHORITIES

Beech-Nut v. Warner Lambert Co., 480 F.2d 801, 803 (2d Cir.1973) .............................. 7

Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983) ... 12,14

Champion Spark Plug Corp. v. Sanders, 331 U.S. 125, 130 (1947)................................. 10

Church of Scientology Intern. v. Elmira Mission of the Church of Scientology, 794 F.2d
    38 (2d Cir. 1986).......................................................................................................... 10

Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir.1985 ............................................. 7

Consumers Union of United States v. General Signal Corp., 724 F.2d 1044, 1053 (2d Cir.
    1983) ............................................................................................................................. 11

E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc., 90 F.Supp.2d. 277, 293 (S.D.N.Y.
    2000) ............................................................................................................................... 9

Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 122 (2d Cir. 1994) .......... 7

Gruner + Jahr USA Publishing, Div. of Gruner + Jahr Printing & Publishing Co. v.
    Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993).................................................... 8

Jack Kahn Music Co. v. Baldwin Piano & Organ Co., 604 F.2d 755, 759 (2d Cir.1979) 12

Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)............. 14

Karmikel Corp. v. May Department Stores Co., 658 F.Supp. 1361, 1367 (S.D.N.Y. 1987)
    ........................................................................................................................................ 7

Laureyssens v. Idea Group, Inc., 964 F.2d 131, 135-36 (2d Cir.1992) ............................. 7

Murjani Intern. Ltd. v. Sun Apparel, Inc., 1987 U.S. Dist. LEXIS 6942, *1 (S.D.N.Y.
    1987) ............................................................................................................................. 10

Original Appalachian Artworks, Inc. v. Granada Electronics, Inc., 816 F.2d 68 (2d Cir.
    1987) ............................................................................................................................... 9

Parenting Unlimited Inc. v. Columbia Pictures Television, Inc., 743 F.Supp. 221, 224
    (S.D.N.Y. 1990)....................................................................................................... 7, 13

Sunward Electronics v. McDonald, 362 F.3d 1, 25 (2d Cir. 2004)...................................10

T&T Mfg Co. v. A.T. Cross Co., 587 F.2d 533, 538 (1st Cir. 1978) ................................ 11

Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 395 (2d
      Cir. 2002) ................................................................................................................... 11

VoiceStream Wireless Corp. v. All U.S. Communications, 149 F.Supp.2d 29, 37
      (S.D.N.Y 2001) ........................................................................................................... 11

WGJ Holdings, Inc. v. Greenberg, 2008 U.S. Dist. LEXIS 850 (S.D.N.Y. 2008) ........... 11

John Wiley & Sons, Inc. ("Wiley") respectfully submits this memorandum of law and the accompanying Declarations of Iain Craig and Sue Lewis, both dated February 20, 2008, and the exhibits annexed thereto (referred to as "Craig Decl." and "Lewis Decl." herein), in opposition to plaintiff Direct Marketing Educational Foundation, Inc.'s ("DMEF") motion for a preliminary injunction.

This action involves claims by DMEF for violation of Sections 32 and 43(a) of the Lanham Act, common law infringement, unfair competition and deceptive trade practices. By order to show cause dated February 15, 2008, DMEF applied for a preliminary injunction and temporary restraining order enjoining Wiley from publication of any upcoming issues of the Journal of Interactive Marketing (the "Journal") or any journal bearing a name that is likely to cause confusion with DMEF's trademark JOURNAL OF INTERACTIVE MARKETING (the "DMEF Mark"). By order dated February 15, 2008, the Court issued a temporary restraining order (the "TRO") enjoining Wiley from all use of the DMEF Mark, including publication of its Winter/Spring 2008 issue of the Journal bearing the DMEF Mark pending a hearing and decision on DMEF's motion for a preliminary injunction. As discussed below, DMEF's motion for a preliminary injunction should be denied and the TRO immediately vacated because DMEF cannot demonstrate a likelihood of success on the merits of its claims or irreparable harm. In addition, the hardships to be suffered by Wiley, in the event a preliminary injunction is granted, are far greater and substantial than any hardship to DMEF if the instant motion is denied.

## STATEMENT OF FACTS

In 1988, Wiley and DMEF entered into an agreement for Wiley to publish a journal entitled *Journal of Direct Marketing* (the "Agreement"). Lewis Decl., Ex. 1.  The name of the journal was subsequently changed to the *Journal of Interactive Marketing*, the DMEF Mark at issue in this action. Wiley has published the Journal bearing the DMEF Mark and its predecessor journal with DMEF and its editorial board for the last twenty years.   After three automatic renewals of the term of the Agreement, DMEF advised Wiley, in February 2007 that it no longer wished to publish with Wiley after the Agreement expired in December 31, 2007. Lewis Decl. ¶¶4-5.  Some months after giving this notice, DMEF entered into a publishing agreement with Elsevier for publication of a journal bearing the DMEF Mark.  Lewis Decl. ¶8.

The Agreement between Wiley and DMEF provides for a one year transition period in the event the term is not renewed.   If DMEF chooses not to renew the Agreement, Wiley is entitled to continue publication of the Journal. Lewis Decl, Ex. 1, ¶16.  During the first year after expiration of the Agreement, Wiley is permitted to continue use of the DMEF Mark on the Journal as along as it includes a disclaimer that the Journal is no longer the official journal of DMEF.  Lewis Decl, Ex. 1, ¶16. After this first year, Wiley must change the title of the Journal and continue to carry the disclaimer for one additional year.   Lewis Decl, Ex. 1, ¶16.   Wiley retains ownership of the subscriber list for the Journal and all backvolume inventory after expiration of the Term. Lewis Decl, Ex. 1, ¶16.  Wiley and DMEF co-own previously published content from the Journal.   Upon information and belief, Elsevier will not begin publication of a journal bearing the DMEF Mark until after the one year transition period.

As permitted by the Agreement, Wiley planned a Winter/Spring 2008 "Best Of" issue of the Journal for publication in late February or early March 2008. Lewis Decl, ¶¶9-11. The Winter/Spring 2008 issue of the Journal includes ten articles which were published in the Journal between 2002 and 2007. Wiley selected articles for the Winter/Spring 2008 issue on the basis of usage and download statistics from approximately 1500 institutional users over the past five years. Lewis Decl, ¶14-16. DMEF has sought to enjoin Wiley's publication of the Winter/Spring 2008 issue of the Journal pending determination of the parties' rights and obligations under the Agreement.

## ARGUMENT

## I.     STANDARD FOR GRANTING INJUNCTIVE RELIEF

To obtain a preliminary injunction, a movant must demonstrate: (1) either a likelihood that it will succeed on the merits of its claim, or that the merits present serious questions for litigation and the balance of hardships tips decidedly toward the plaintiff; and (2) that without the injunction, it will likely suffer irreparable harm before the court can rule upon it's claim. Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 122 (2d Cir. 1994); Laureyssens v. Idea Group, Inc., 964 F.2d 131, 135-36 (2d Cir.1992); Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir.1985). Issuance of a preliminary injunction is an extraordinary remedy and will not be granted absent a clear showing that the moving party has met its burden of proof. Beech-Nut v. Warner Lambert Co., 480 F.2d 801, 803 (2d Cir.1973); Parenting Unlimited Inc. v. Columbia Pictures Television, Inc., 743 F.Supp. 221, 224 (S.D.N.Y. 1990) (Leisure, J.); Karmikel Corp. v. May Department Stores Co., 658 F.Supp. 1361, 1367 (S.D.N.Y. 1987) (Lowe, J.).

## II.    DMEF CANNOT SUCCEED ON THE MERITS OF ITS CLAIM FOR TRADEMARK INFRINGEMENT

In order to succeed on a claim for trademark infringement pursuant to Section 32(a) of the Lanham Act, DMEF must establish that Wiley used the DMEF Mark (1) in commerce; (2) without consent; (3) in connection with the sale, offering for sale or advertising of goods; and (4) in a manner likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such goods. Gruner + Jahr USA Publishing, Div. of Gruner + Jahr Printing & Publishing Co. v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993).

### A.    Wiley's use of the DMEF Mark on the Journal is authorized by DMEF

DMEF's claim for trademark infringement necessarily fails because the Agreement expressly permits Wiley to use the DMEF Mark as the title of the Journal throughout calendar year 2008.  Paragraph 16 of the Agreement provides:

> If after the initial term or subsequent terms the DMEF chooses not to renew the agreement Wiley may continue to publish the Journal providing that it (a) changes the title within one (1) year of date of termination specified in the Notice of Termination sent by DMEF to Wiley and (b) carries a notification in each issue for two (2) years that the Journal is no longer the official journal of the DMEF.  Backvolume inventory and subscriber list remain property of Wiley.

Lewis Decl, Ex. 1, ¶16.

### B.    Wiley is acting within the scope of the license granted by DMEF

In the present case, Wiley's authorization to use the DMEF Mark in accordance with Paragraph 16 has not been terminated, nor is Wiley otherwise acting outside the scope of its license. The Agreement expressly permits use of the DMEF Mark as the title of the Journal during 2008 as long as Wiley informs subscribers that the Journal is "no longer the official journal of the DMEF".  Lewis Decl, Ex. 1, ¶16. The Winter/Spring

2008 issue of the Journal includes just such a notice, disassociating DMEF from the Journal on the cover of the Journal. Lewis Decl, ¶19; Ex. 3.  Further, DMEF acknowledges that Wiley and DMEF co-own the content previously published in the Journal. Complaint, ¶29. Wiley is therefore entitled to reprint this content in the Winter/Spring 2008 issue of the Journal.

The Agreement does not provide for DMEF's continued exercise of editorial control during this transition year nor does it limit or restrict Wiley's continued publication of the Journal.  Rather, the transition year signifies a break from publication of the Journal in conjunction with DMEF, consistent with the required modification to the cover and disclaimer required by the Agreement.[1]  These requirements for the transition period are in stark contrast to the contractual requirement that, during the "term of the Agreement, …, Wiley will display prominently on the masthead and cover, …, that the Journal is published by Wiley in conjunction with the DMEF."  Lewis Decl. Ex. 1, ¶5.

In the cases cited by DMEF, trademark infringement is found only where the licensee does not have express authorization to continue use of the mark, as Wiley does, and where the licensee is publishing outside the scope of the license.   In E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc., 90 F.Supp.2d. 277, 293 (S.D.N.Y. 2000) (Kaplan, J.), a sublicensee manifestly violated terms of its sublicense by using the plaintiff's "EGL" (European Gemological Laboratory) trademark outside of the agreed-upon geographical territory.  The sublicensee also sought to profit from the goodwill associated with the plaintiff's mark by associating the mark with its own competing gemological grading services, outside the scope of the license.  Id. at 286, 293.  In Original Appalachian

---

[1] Wiley will continue to carry the disclaimer on its newly titled journal after expiration of the one transition year period as required by the Agreement. Lewis Decl. ¶19.

Artworks, Inc. v. Granada Electronics, Inc., 816 F.2d 68 (2d Cir. 1987), a licensee was enjoined from the further sale of dolls bearing the plaintiff's mark in the United States as the licensee was only authorized to sell the dolls in Spain.  Murjani Intern. Ltd. v. Sun Apparel, Inc., 1987 U.S. Dist. LEXIS 6942, *1 (S.D.N.Y. 1987) (Leisure, J.) and Church of Scientology Intern. v. Elmira Mission of the Church of Scientology, 794 F.2d 38 (2d Cir. 1986) are inapposite as each involved a licensee's continued use of a mark after its license and authorization to use the mark had been terminated.[2]

**C.**    **There is no likelihood of confusion**

There is no likelihood of confusion resulting from Wiley's continued publication of the Journal using the DMEF Mark.  Upon information and belief, DMEF will not commence publication of any materials bearing the DMEF Mark with Elsevier or any other publisher until expiration of the one year transition period allowed in the Agreement.  In addition, Wiley has modified the cover of the Winter/Spring 2008 issue of the Journal, as contractually required, to include a prominent orange burst with the statement

> THIS JOURNAL IS NO LONGER THE OFFICIAL JOURNAL OF THE DIRECT MARKETING EDUCATIONAL FOUNDATION.

Lewis Decl, Ex. 3.  Disclaimers, such the one to be printed on the cover of the Winter/Spring 2008 issue of the Journal, are a favored way of alleviating consumer confusion as to the source or sponsorship. Champion Spark Plug Corp. v. Sanders, 331

---

[2] DMEF similarly cites a number of authorities to argue that a particularly strong likelihood of consumer confusion (establishing trademark infringement) and a compelling need for injunctive relief arises when a licensee uses a mark outside the scope of its license because there is a heightened risk that the public would assume the licensor approved the unauthorized goods.  See, e.g. Church of Scientology Intern. v. Elmira Mission of the Church of Scientology, supra; Murjani Int'l Ltd., supra 1987 U.S. Dist. LEXIS at **29-**31; Sunward Electronics v. McDonald, 362 F.3d 1, 25 (2d Cir. 2004).  Again, these authorities are inapposite in light of the fact that Wiley's use of the DMEF mark is expressly authorized in the Agreement.

U.S. 125, 130 (1947); see also, Consumers Union of United States v. General Signal Corp., 724 F.2d 1044, 1053 (2d Cir. 1983) (vacating preliminary injunction enjoining broadcast of commercials quoting from an issue of Consumer Reports as absolute prohibitions on speech are improper where there is a possibility that an explanation or disclaimer will suffice); VoiceStream Wireless Corp. v. All U.S. Communications, 149 F.Supp.2d 29, 37 (S.D.N.Y 2001) (Stein, J.) (Court found there no likelihood of consumer confusion and thus no irreparable harm when disclaimer was printed on the label of allegedly infringing product package indicating that alleged infringer was unrelated to the original manufacturer).

**D.      The terms of the Agreement should not be modified by the Court**

By this motion, DMEF improperly seeks to change the scope and terms of the license agreed to by the parties.  The Court should not rescind or modify the terms of the Agreement by granting DMEF's motion for a preliminary injunction or providing DMEF with editorial controls.  Rather, the terms of the Agreement should continue to govern the relationship between Wiley and DMEF.  See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 395 (2d Cir. 2002) (In general, courts considering negotiated agreements governing mark use accord them greater deference than they give to the equitable defenses of laches and acquiescence.) Rescission of a freely bargained agreement is only available where a trademark owner can show that the public interest will be significantly injured if the contract is allowed to stand. Id. at 396; see T&T Mfg Co. v. A.T. Cross Co., 587 F.2d 533, 538 (1st Cir. 1978) (denying rescission of trademark agreement despite likelihood of confusion because there was no proof that consumers buying the junior user's product would receive an inferior product); WGJ Holdings, Inc.

v. Greenberg, 2008 U.S. Dist. LEXIS 850 (S.D.N.Y. 2008) (Pauley, J.).    There is no evidence of any such injury to the public interest herein and Wiley should not be penalized by a preliminary injunction modifying the terms of the Agreement to permit such control.

## III.    DMEF IS NOT ENTITLED TO INJUNCTIVE RELIEF BECAUSE IT CANNOT DEMONSTRATE IRREPARABLE HARM

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983).    DMEF cannot demonstrate that publication of the Winter/Spring 2008 issue of the Journal will irreparably harm DMEF.  As discussed above, there is no unauthorized use of the DMEF Mark or likelihood of confusion resulting from Wiley's publication of the Journal in 2008.  DMEF is not, therefore, entitled to a presumption of irreparable harm. Rather, DMEF must satisfy the prerequisite set forth above of establishing that it will suffer irreparable harm if Wiley is permitted to publish the Winter/Spring 2008 issue of the Journal.

### A.    DMEF's claimed harm is speculative

There is no evidentiary basis for DMEF's claim that the quality of the Journal will suffer or that DMEF will be harmed if DMEF is not permitted to exercise editorial control over the Journal, which it is not contractually entitled to in any event. DMEF's assertions in that regard are nothing more than speculation and are not sufficient to demonstrate irreparable harm. See Jack Kahn Music Co. v. Baldwin Piano & Organ Co., 604 F.2d 755, 759 (2d Cir.1979) ("a party must provide more than mere speculation that

there is a possibility that it may in some unproven way suffer loss or damage"); <u>Parenting Unlimited</u>, 743 F.Supp. 221, 224 (S.D.N.Y. 1990) (Lowe, J.).

**B.     The Winter/Spring 2008 issue of the Journal is not inferior in quality to previously published issues of the Journal**

The articles to be included in the Winter/Spring 2008 issue of the Journal have already been approved for publication by DMEF's editorial board. Lewis Decl, ¶10.  The upcoming issue of the Journal includes ten articles which were published in the Journal between 2002 and 2007. Lewis Decl, ¶13.   These articles were selected and vetted by an editorial board chosen by DMEF during the term of the Agreement. Lewis Decl, ¶10. The articles were selected using a methodology similar to, although much more reliable and formal in comparison to, the methodology used by DMEF's editors when it produced a "Best Of" issue of the Journal in 1997.  Wiley selected articles for the Winter/Spring 2008 issue on the basis of download and usage statistics from approximately 1500 institutional users over the past five years. Lewis Decl, ¶¶13-15.   DMEF's editors, by contrast, selected articles for the 1997 "Best Of" issue of the Journal by informally polling their editorial board and choosing the ten articles that received the most votes. Lewis Decl, ¶16.  Wiley asserts, and DMEF cannot contest, that the quality and relevance of the "Best Of" issue is enhanced by the breadth and scope of Wiley's methodology. There is no evidence that this upcoming issue of the Journal will be inferior to those previously published or that publication or that it will harm DMEF in any way.

**C.     The effect of publication of the Winter/Spring 2008 issue of the Journal on the impact factor will be neutral**

DMEF's unfounded assertion that the impact factor of the Journal will be negatively affected by publication of the Winter/Spring 2008 issue of the Journal should

not be considered as evidence of irreparable harm. As explained in the Declaration of Iain Craig, publication of the Winter/Spring 2008 issue of the Journal will have <u>no effect on the impact factor</u>. <u>See</u> <u>generally</u> Craig Decl.

There is no evidence of any irreparable harm to DMEF if Wiley publishes the Winter/Spring 2008 issue of the Journal and DMEF's motion for a preliminary injunction should be denied. <u>See</u> <u>Bell & Howell</u>, <u>supra</u>, 719 F.2d at 46 (preliminary injunction vacated where there appeared to be little confusion, if any, as to the origin of the goods and no significant likelihood of damage to plaintiff's reputation since it was not shown that defendant's goods, which have a common origin of manufacture with plaintiff's goods, were inferior to those sold by plaintiff and were injuring plaintiff's reputation).

## IV.    THE BALANCE OF HARDSHIPS FAVORS WILEY

In the absence of proof of likelihood of success on the merits, a party must prove that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in its favor. <u>Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.</u>, 596 F.2d 70, 72 (2d Cir. 1979). In the event a preliminary injunction is granted or the terms of the Agreement are modified to permit DMEF to exercise editorial control, Wiley will not publish the Winter/Spring 2008 issue of the Journal in a timely manner. As a result, Wiley will suffer (i) the loss of up to $120,000 in prepaid subscriber revenues, (ii) a loss in subscriber renewals on an indefinitely ongoing basis resulting in lost revenues which cannot be quantified, (iii) damage to Wiley's reputation as a reliable provider of quality content in a timely manner with individual and institutional subscribers; and (iv) damage to Wiley's reputation as a

reliable publisher with potential society and academic partners.[3] Lewis Decl. ¶20.  This hardship is far greater than the speculative reputational damage and the nonexistent harm to the Journal's impact factor claimed by DMEF if Wiley publishes the Winter/Spring 2008 issue of the Journal.

---

[3] It is worth noting that a delay in publication of the Journal, which will result if DMEF prevails on this motion, could have a negative effect on the Journal's impact factor, including loss of the Journal's impact factor in its entirety in the event Thomson Scientific decides not to include the Journal in its indexing system. Lewis Decl. ¶23, Craig Decl. ¶8.

## CONCLUSION

For the foregoing reasons, DMEF's motion for a preliminary injunction should be denied, the temporary restraining order should be vacated and Wiley should be granted such other relief this Court deems just and proper.

Dated: Hoboken, NJ
   February 21, 2008     **ASHIMA AGGARWAL**


         By: _____/s_____
           Ashima Aggarwal (AA-1444)

         John Wiley & Sons, Inc.
         111 River Street
         Hoboken, NJ 07030-5774
         (tel) (201) 748-6000
         (fax) (201) 748-6500


         **BALBER PICKARD**
         **MALDONADO & VAN DER TUIN, PC**


         By: _____/s_____
           Roger Juan Maldonado (RM-7035)
           Sarah Yousuf (SY-0305)

         Balber Pickard Maldonado & Van Der Tuin PC
         1370 Avenue of the Americas
         New York, New York 10019
         Telephone:  (212) 246-2400

         *Attorneys for Defendant, John Wiley & Sons, Inc.*