**BALBER PICKARD MALDONADO & VAN DER TUIN, PC**
Roger Juan Maldonado (RM-7035)
Sarah Yousuf (SY-0305)
1370 Avenue of the Americas
New York, New York 10019
Telephone: (212) 246-2400
Facsimile: (212) 765-4212

Ashima Aggarwal (AA-1444)
John Wiley & Sons, Inc.
111 River Street
Hoboken, NJ 07030-5774
Telephone: (201) 748-6000
Facsimile: (201) 748-6500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
DIRECT MARKETING EDUCATION
FOUNDATION, INC.

      Plaintiff,

 -against-

JOHN WILEY & SONS, INC.

      Defendant.
--------------------------------------------------------

Case No. 08 CV 1464 (LMM)

**Defendant demands a trial by jury**

## ANSWER

 Defendant John Wiley & Sons, Inc. ("Wiley"), through its undersigned counsel, hereby respectfully submits this Answer:

 1. Admit that DMEF seeks preliminary and permanent injunctive relief pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. §1116(a), based on the following claims: (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. §1114; (2) false designation of origin and false description and representation under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); and (3) common law infringement,

unfair competition and deceptive practices. Admit that Plaintiff also seeks a declaratory judgment pursuant to 28 U.S.C. §§2201 et seq. stating that the rights to the volume and issue numbering used in conjunction with a journal title and the ISSNs are inseparable from the rights in that title and that DMEF may continue the volume and issue numbering sequence associated with the ISSNs when it resumes publication of the journal. Deny the remaining allegations set forth in paragraph 1.

2. Admit the allegations set forth in paragraph 2.

3. Admit the allegations set forth in paragraph 3.

4. Admit that the laws of the State of New York governs the parties' claims in this action pursuant to the parties' choice of law provisions in the contract between Wiley and Plaintiff and deny the remaining allegations set forth in paragraph 4.

5. Consent to this Court's jurisdiction over this action and deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 5.

6. Admit the allegations set forth in paragraph 6.

7. Admit the allegations set forth in paragraph 7.

8. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 8.

9. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 9.

10. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 10.

11. Admit that DMEF and Wiley entered into the agreement attached to the Complaint as Exhibit B (the "Agreement") and refer the Court to the Agreement for its terms. Deny the remaining allegations set forth in paragraph 11.

12. Admit that the title of the journal was changed to Journal of Interactive Marketing ("JIM") in 1998, that the ISSN for print publication of the JIM is 1094-9968, that the ISSN for the electronic version of JIM is 1520-6653, that the Volume 12, No. 1 of the JIM published in Winter 1998 and that, as of the date of the Complaint, Volume 21, No. 4, published on November 15, 2007 was the most recent issue of the JIM. Deny knowledge or information sufficient to form a belief as to the remaining allegations set forth in paragraph 12.

13. Admit the allegations set forth in paragraph 13.

14. Admit the allegations set forth in paragraph 14.

15. Deny the allegations set forth in Paragraph 15 and refer the Court to the Agreement for its terms.

16. Deny the allegations set forth in Paragraph 16 and refer the Court to the Agreement for its terms.

17. Deny the allegations set forth in paragraph 17 and refer the Court to the Agreement for its terms.

18. Deny the allegations set forth in paragraph 18 and refer the Court to the Agreement for its terms.

19. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 19.

20. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 20.

21. Admit that the SSCI is measure and reported by ThomsonScientific Journal Citation Reports and deny the remaining allegations set forth in paragraph 21.

22. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 22.

23. Deny the allegations set forth in paragraph 23.

24. Deny the allegations set forth in paragraph 24.

25. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 25.

26. Deny the allegations set forth in paragraph 26.

27. Admit that, in February 2007, DMEF provided written notice of non-renewal to Wiley in accordance with the terms of the agreement and deny the remaining allegations set forth in paragraph 27.

28. Admit that, in August 2007, DMEF issued a press release announcing that it had entered into a publishing agreement with Elsevier Publishing and deny knowledge or information sufficient to form a belief as to the remaining allegations set forth in paragraph 28.

29. Admit that Wiley has agreed that DMEF and Wiley co-own the copyright in all material published in JIM during the term of the Agreement, deny the remaining allegations set forth in paragraph 29 and refer the Court to the referenced correspondence for its content.

30. Deny the allegations set forth in paragraph 30.

31. Deny the allegations set forth in paragraph 31.

32. Admit that the parties discussed resolution of disputed issues and were not able to reach resolve the disputed issues and deny knowledge or information sufficient to form a belief as to the remaining allegations set forth in paragraph 32.

33. Admit that, in November 2007, Wiley instructed authors to submit manuscripts for inclusion in the journal directly to Wiley and deny the remaining allegations set forth in paragraph 33.

34. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 34.

35. Admit that Wiley previously rejected a proposal from DMEF to extend the terms of the Agreement and that Wiley intended to publish a "Best Of" issue of the journal in 2008 which would include articles from the previous ten years and deny the remaining allegations set forth in paragraph 35.

36. Deny the allegations set forth in paragraph 36.

37. Deny the allegations set forth in paragraph 37.

38. Deny the allegations set forth in paragraph 38.

39. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 39.

40. Deny the allegations set forth in paragraph 40.

41. Deny the allegations set forth in paragraph 41.

42. Deny the allegations set forth in paragraph 42.

43. Deny the allegations set forth in paragraph 43.

44. Deny the allegations set forth in paragraph 44.

45. Deny the allegations set forth in paragraph 45.

## COUNT ONE
## Trademark Infringement under Section 32 of the Lanham Act

46. Wiley repeats its responses to paragraphs 1 through 45 as though fully set forth herein.

47. The allegations set forth in paragraph 47 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, Wiley denies the allegations set forth in paragraph 47.

48. The allegations set forth in paragraph 48 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, Wiley denies the allegations set forth in paragraph 48.

49. The allegations set forth in paragraph 49 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, Wiley denies the allegations set forth in paragraph 49.

50. The allegations set forth in paragraph 50 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, Wiley denies the allegations set forth in paragraph 50.

51. The allegations set forth in paragraph 51 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, Wiley denies the allegations set forth in paragraph 51.

52. The allegations set forth in paragraph 52 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, Wiley denies the allegations set forth in paragraph 52.

53. The allegations set forth in paragraph 53 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, Wiley denies the allegations set forth in paragraph 53.

54. Deny the allegations set forth in paragraph 54.

55. Deny the allegations set forth in paragraph 55.

56. The allegations set forth in paragraph 56 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, Wiley denies the allegations set forth in paragraph 56.

57. Deny the allegations set forth in paragraph 57.

## Count Two
## False Designation of Origin, False Description and False Representation under Section 43(a) of the Lanham Act

58. Wiley repeats its responses to paragraphs 1 through 57 as though fully set forth herein.

59. Wiley refers the Court to the Agreement for its terms and denies the allegations set forth in paragraph 59.

60. Deny the allegations set forth in paragraph 60.

61. Deny the allegations set forth in paragraph 61.

62. The allegations set forth in paragraph 62 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, Wiley denies the allegations set forth in paragraph 62.

63. Deny the allegations set forth in paragraph 63.

## Count Three
### Common Law Infringement, Unfair Competition and Deceptive Practices

64. Wiley repeats its responses to paragraphs 1 through 63 as though fully set forth herein.

65. Deny the allegations set forth in paragraph 65.

66. Deny the allegations set forth in paragraph 66.

## Count Four
### Declaratory Judgment Based on Section 43(a) of the Lanham Act

67. Wiley repeats its responses to paragraphs 1 through 66 as though fully set forth herein.

68. Admit the allegations set forth in paragraph 68.

69. Admit the allegations set forth in paragraph 69.

70. Deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 70.

71. Deny the allegations set forth in paragraph 71.

72. Admit that Volume 1, No. 1 through Volume 21, No. 4 of the journal have been published and deny the remaining allegations set forth in paragraph 72.

73. Deny the allegations set forth in paragraph 73.

74. Deny the allegations set forth in paragraph 74.

## Count Five
### Declaratory Judgment Based on Common Law Infringement and Unfair Competition

75. Wiley repeats its responses to paragraphs 1 through 74 as though fully set forth herein.

76. Deny the allegations set forth in paragraph 76.

77.     Deny the allegations set forth in paragraph 77.

### First Affirmative Defense

78.     Plaintiff's claims are barred by reason of waiver or estoppel.

### Second Affirmative Defense

79.     Plaintiff's claims are barred by reason of laches.

### Third Affirmative Defense

80.     Plaintiff's claims are barred by reason of unclean hands.

### Fourth Affirmative Defense

81.     Plaintiff's claims should be dismissed for failure to state a claim.

### First Counterclaim
### (for breach of contract)

82.     Wiley repeats and realleges the allegations set forth in paragraphs 1-81 as if fully set forth herein.

83.     Wiley and DMEF entered into an Agreement on August 5, 1988 (the "Agreement"), for publication of a journal, launched the prior year, called the Journal of Direct Marketing.

84.     The Journal originally launched in 1987 and, in 1988, was not yet established as a leading journal in the field.

85.     Wiley agreed to publish the Journal, and to be responsible for the business growth of the Journal. Revenues for the Journal when the Agreement was signed were less than $10,000 per year. Revenues now exceed $250,000 per year.

86.     The Agreement reflects the intention of DMEF and Wiley to collaborate with respect to the Journal. Thus, while ownership of the title of the Journal was to be

retained by DMEF, ownership of back volume inventory and subscriber lists was transferred by DMEF to Wiley.

87. The Agreement allows for termination by either party.

88. Paragraph 16 of the Agreement states that in the event of non-renewal by DMEF, Wiley can "continue to publish the journal" so long as it "changes the title within one (1) year of the date of termination specified in the Notice of Termination," and further provided that Wiley carries a notice in the Journal for two years that the Journal is "no longer the official journal of the DMEF." The Agreement also provides that "[b]ackvolume inventory and subscriber list remain property of Wiley."

89. The Agreement does not address editorial control during the one year period from termination during which Wiley had the right to continue publication of the Journal under its existing title.

90. Upon information and belief, DMEF did not seek editorial control of the Journal during such one year period at the time the Agreement was negotiated.

91. At the time the Agreement was negotiated, DMEF did not own a trademark registration for the word mark, Journal of Direct Marketing, the then-title of the Journal.

92. The Agreement vests sole ownership of the subscriber list with Wiley, but does not explicitly address the sequential numbering system that subscribers associate with the Journal. Upon information and belief, both parties anticipated that these assets would remain with Wiley after any termination of the Agreement by DMEF.

93. Institutional subscribers to journals catalog and bind issues sequentially. To "renew" a journal means to purchase the next sequential volumes and issues.

94. In 1998, the Journal changed its name to "Journal of Interactive Marketing." At that point, the Journal underwent a major conceptual shift in approach and scope, and also retained a new editor. Wiley's editorial team played a strong advisory role in this shift, and also in the transition to a new editor. Notwithstanding the name change, the Journal maintained its sequential numbering.

95. Immediately before the name change, the Journal published a "Best of" issue comprised of previously published content.

96. In June 2006, DMEF hired a new president, Ms. Terri Bartlett.

97. In February 2007, DMEF provided Wiley with notice of non-renewal of the Agreement.

98. On March 13, DMEF sent Wiley a Request for Proposal (RFP) to bid on publication rights for the Journal. DMEF told Wiley that DMEF would send the RFP to other publishers as well. The RFP failed to state that Wiley had a right to publish the Journal under the same title for a year after termination of the Agreement or that Wiley owned the subscriber list for the Journal.

99. On March 13, Wiley notified Ms. Bartlett that the RFP omitted the information about Wiley's contractual rights.

100. In a subsequent phone call, a DMEF consultant told Wiley that the RFP was being changed to an accurate version. Wiley requested that DMEF send Wiley the new RFP, but despite repeated requests, Wiley never received it.

101. Upon information and belief, between May and August 2007, DMEF issued either the same or a new RFP, reviewed proposals, selected a publisher, and

contracted to publish the journal with that publisher. At no point was Wiley contacted or informed about this process.

102. On August 23, 2007, DMEF issued a press release (the "Press Release") announcing it had entered into a publishing agreement with a competitor of Wiley, Elsevier. The Press Release was widely disseminated and targeted to consumers of the Journal. In the Press Release, DMEF stated that DMEF and Elsevier would publish the journal together under the title Journal of Interactive Marketing starting in January 2008.

103. Upon information and belief, DMEF knew the Press Release was materially false.

104. Upon information and belief, DMEF intended to harm Wiley by issuing the Press Release.

105. Wiley was in fact injured.

106. DMEF's dissemination of the Press Release damaged Wiley by causing confusion amongst Wiley's customers and authors, and in the general marketplace.

107. DMEF's dissemination of the Press Release also jeopardized Wiley's revenues from the Journal since customers might send renewal money to Elsevier instead of to Wiley.

108. Moreover, DMEF's dissemination of the Press Release made it more difficult for Wiley to retain new editorial leadership and new articles for the Journal so that it could maintain continuous publication of the Journal during the one year transition period as anticipated under the Agreement.

109. On January 2008, Wiley received notification from Copyright Clearance Center, a collecting society, that Elsevier had listed the Journal as being published by Elsevier as of the first issue of 2008.

110. From the time Wiley received notice of non-renewal from DMEF, Wiley has attempted to retain an editor and solicit manuscripts for its Journal.

111. Upon information and belief, the DMEF has used its influence to prevent such individuals from accepting the editor position for the Journal.

112. During the pendency of this action, a member of DMEF's editorial board posted false and misleading accounts of this dispute on the internet and on electronic mailing lists and urged a boycott of Wiley's products. These false accounts were intended to harm Wiley and increase DMEF's leverage to deprive Wiley of its contractual rights.

113. Throughout the term of the Agreement, DMEF was chronically late in delivering content for the Journal.

114. Given the notice of termination, DMEF's stated desire to publish with Elsevier as of January 1, 2008, DMEF's interference in the marketplace, and DMEF's chronic lateness, Wiley decided to publish a "Best of" double issue with content previously published in the Journal during the first quarter of 2008.

115. On March 13, 2008, Wiley submitted its proposed double issue of the Journal to DMEF for review. The issue included the disclaimer required by the Agreement.

116. On March 18, 2008, DMEF rejected the proposed double-issue even though it contained previously approved content, and the Journal had previously

published a similar edition ten years earlier. Upon information and belief, DMEF rejected this double issue in bad faith, with the intent of depriving Wiley of its right to continuously publish the Journal under the current title for one year from the date of any DMEF termination, and under a new title thereafter.

117.   From 1988 through 2007, DMEF received the benefits of the Agreement with Wiley. However, the DMEF wanted a different arrangement.

118.   The DMEF's actions as set forth herein, including (1) interfering with Wiley's attempts to find a new editor, (2) sending out inaccurate RFPs, (3) issuing the Press Release, and (4) rejecting Wiley's double issue, were all designed to deprive Wiley of its contractual ownership rights in the Journal, to frustrate Wiley's publication of the Journal in calendar year 2008, to create an environment where Wiley would be unable to continue to publish the Journal for one year under its current title, and thereafter under a successor title. This was done in order to deny Wiley its benefits under the Agreement.

119.   DMEF has materially breached its obligations under the Agreement.

120.   Wiley has fully performed its obligations under the Agreement.

121.   As a result of DMEF's breach, Wiley is entitled to a judgment for damages in an amount to be proven at trial.

## SECOND COUNTERCLAIM
### (breach of the covenant of good faith and fair dealing)

122.   Wiley repeats and realleges the allegations set forth in paragraphs 1-121 as if fully set forth herein.

123.   DMEF has materially breached the implied covenant of good faith and fair dealing in the Agreement.

124.   Wiley has fully performed its obligations under the Agreement.

125. As a result of DMEF's breach, Wiley is entitled to a judgment for damages in an amount to be proven at trial.

### THIRD COUNTERCLAIM
### (False Advertising in Violation of Lanham Act Section 1125 (a))

126. Wiley repeats and realleges the allegations set forth in paragraphs 1-125 as if fully set forth herein.

127. The DMEF's actions set forth herein, including the false and misleading Press Release, constitute false advertising in violation of the Lanham Act.

### FOURTH COUNTERCLAIM
### (for a declaratory judgment)

128. Wiley repeats and realleges the allegations set forth in paragraphs 1-127 as if fully set forth herein.

129. In accordance with the plain meaning of the Agreement, Wiley is entitled to a declaration of its ownership of the sequential numbering for the Journal.

**WHEREFORE**, Wiley requests that this Court enter judgment as follows:

(a) dismissing DMEF's Complaint in its entirety;

(b) awarding to Wiley damages sustained by reason of DMEF's breach of the Agreement in an amount not less than $500,000;

(c) declaring Wiley owner of the sequential numbering of the Journal;

(d) enjoining DMEF from interfering with Wiley's plans for the Journal, taking actions to deprive Wiley of the benefits of the Agreement, and from making false public statements relating thereto; and

(e) awarding to Wiley additional relief as the Court may deem just, proper and equitable.

Dated: May 2, 2008
      Hoboken, NJ

                                ASHIMA AGGARWAL

                                By: ___/s/_____
                                   Ashima Aggarwal
                              John Wiley & Sons, Inc.
                              111 River Street
                              Hoboken, NJ 07030
                              Tel: 201 748-6446
                              Fax: 201 748-6500
                              *Attorney for Defendant*